**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Alexa Hernandez,

        Plaintiff,

v.

Bisbee Unified School District #2, et al.,

        Defendants.

No. CV-25-00475-TUC-RM (BGM)

**REPORT AND RECOMMENDATION**

Before the Court is Defendants Bisbee Unified School District #2 (District), Bryan Bullington, Joni Giacamino, Jennifer McBeth, Jonathan Watts, and Tom Woody's Motion to Dismiss Amended Complaint and Limited Appearance by Defendants Bullington and Woody. (Doc. 17.)  The motion has been fully briefed.  (*See* Docs. 22, 23.)  Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Local Rules of Civil Procedure 72.1 and 72.2, this case was referred to Magistrate Judge Bruce G. Macdonald for a report and recommendation.  (Doc. 16.)  Upon review of the parties' briefs, the Magistrate Judge recommends that the District Judge, after her independent review, grant in part and deny in part Defendants' motion to dismiss.

## BACKGROUND[1]

In 2017, Plaintiff Alexa Hernandez was hired as a teacher by the Bisbee Unified

---

[1] The information in the background section is taken from Plaintiff's Amended Complaint. (*See* Doc. 12.)  All allegations of material fact are taken as true and construed in the light most favorable to Plaintiff as the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

School District.  (Doc. 12, ¶¶ 2, 15.)  Plaintiff is a Hispanic female over the age of forty.  (*Id*. ¶ 1.)  Over the last seven years, Plaintiff has applied to six different positions within the District.  (*Id*. ¶ 16.)  She was denied the positions, despite being qualified for them, because of her national origin, race, and/or age.  (*Id*.)

During the 2021-2022 school year, Plaintiff applied for a Dean of Students Plus Athletic Director position.  (*Id*. ¶ 18.)  She was denied the position, and it was filled by a white, non-Hispanic male.  (*Id*. ¶ 19.)  During the 2022-2023 school year, Plaintiff applied for a Dean of Students position.  (*Id*. ¶ 20.)  She was denied the position, and it was filled by a white, non-Hispanic female.  (*Id*.)  During the 2022-2023 school year, Plaintiff applied for an Athletic Director/HS Teacher Fulltime position.  (*Id*. ¶ 21.)  She was denied the position, and it was filled by a white, non-Hispanic male.  (*Id*.)  During the 2023-2024 school year, Plaintiff applied for a Part-time Athletic Director position.  (*Id*. ¶ 23.)  She was denied the position, and it was filled by a black male.  (*Id*.)  In January 2024, Plaintiff applied for an Interim Part-time Athletic Director position.  (*Id*. ¶ 24.)  She was denied the position, and the position was withdrawn.  (*Id*.)  In January 2024, Plaintiff also applied for an Athletic Director/HS Teacher Fulltime position.  (*Id*. ¶ 25.)  She was denied the position, and it was filled by a white, non-Hispanic female.  (*Id*.)

In March 2024, Plaintiff reported concerns of discrimination in the hiring process to her school's principal.  (*Id*. ¶ 29.)  After she complained, Plaintiff was subjected to verbal criticism, unequal disciplinary treatment, and instructed to remove an online funding post for a student-led computer project by school administrators.  (*Id*. ¶¶ 26-35.)

In April 2024, Plaintiff filed a charge with the EEOC.  (*Id*. ¶ 12.)  On June 25, 2025, Plaintiff was issued a right-to-sue letter.  (*Id*.)  And on August 21, 2025, Plaintiff filed the civil action at hand.  (Doc. 1.)

**PROCEDURAL HISTORY**

On October 11, 2025, Plaintiff filed an Amended Complaint.  (Doc. 12.)  On November 20, 2025, Defendants filed a Motion to Dismiss Amended Complaint and Limited Appearance by Defendants Bullington and Woody.  (Doc. 17.)  On December 22,

2025, Plaintiff filed a Response to Motion to Dismiss, (Doc. 22); and on January 15, 2026, Defendants filed a Reply in Support of Motion to Dismiss Amended Complaint, (Doc. 23). This Report and Recommendation follows.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Dismissal is appropriate when the complaint fails to provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks and citation omitted).

"In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party; but conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Turner v. City and Cnty. of S. F.*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quotation marks and citation omitted). Not only must a complaint "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" its "factual allegations … must plausibly suggest an entitlement to relief such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

"[W]hile the court assumes that the facts in a complaint are true, it is not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008). A plaintiff may also plead herself out of court if she pleads facts which establish that she cannot prevail on her claim. *Weisbuch v. Cnty. of L.A.,* 119 F.3d 778, 783 n.1 (9th Cir. 1997). If a motion

to dismiss under Rule 12(b)(6) is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (cleaned up).

Generally, review of a 12(b)(6) motion to dismiss "is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). However, "[c]ertain written instruments attached to pleadings may be considered part of the pleading." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*. A document may also be incorporated by reference into a complaint if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder*, 450 F.3d at 448. Consideration may be given to documents incorporated by reference in the complaint "without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908.

**DISCUSSION**

Plaintiff's Amended Complaint contains fifteen claims. (Doc. 12 at 9-16.) They include: (i) national origin discrimination under Title VII of the Civil Rights Act of 1964 (Title VII) against the District; (ii) retaliation under Title VII against the District; (iii) age discrimination under the Age Discrimination in Employment Act (ADEA) against the District; (iv – ix) national origin discrimination under 42 U.S.C. § 1981 against the District and Defendants Bullington, Giacamino, McBeth, Watts, and Woody; and (x – xv) violations of the Equal Protection Clause under 42 U.S.C. § 1983 against the District and Defendants Bullington, Giacamino, McBeth, Watts, and Woody. (*Id*.)

Defendants bring their motion to dismiss asserting Plaintiff's claims should be dismissed because (i) Plaintiff failed to serve Defendants Bullington and Woody with process; (ii) the Court lacks personal jurisdiction over Defendants Bullington and Woody;

(iii) Plaintiff fails to establish a national origin discrimination claim; (iv) Plaintiff fails to state a Title VII retaliation claim; (v) Plaintiff fails to state an age discrimination claim; (vi) Plaintiff's § 1981 national origin discrimination claim fails as a matter of law; (vii) Plaintiff's § 1983 claim fails as a matter of law; and (viii) the individual Defendants are entitled to qualified immunity under § 1983.  (Doc. 17 at 5-13.)  Defendants' arguments are addressed in the order raised.[2]

## I.    Failure To Serve Defendants Bullington and Woody

Defendants first assert that individual Defendants Bullington and Woody should be dismissed from suit because Plaintiff failed to serve them with process and Plaintiff's attorney fails to indicate that she plans on asking for an extension of the service deadline. (Doc. 17 at 5.)  The Court agrees.

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(5), "a party may move to dismiss claims against themselves for insufficient service of process under Rule 4." *Smith v. Dysart Unified Sch. Dist.*, 2025 WL 3153441, at *2 (D. Ariz. Nov. 12, 2025) (cleaned up). "Federal Rule of Civil Procedure 4 governs service of process in federal district court." *Brockmeyer v. May*, 383 F.3d 798, 800 (9th Cir. 2004).  Rule 4 provides that a plaintiff must serve a defendant with a summons and copy of the complaint "within 90 days after the complaint is filed."  Fed. R. Civ. P. 4(m).  If service is not made in "substantial compliance with Rule 4," neither actual notice nor simply naming the person in the caption of the complaint will subject the defendants to the court's personal jurisdiction. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982).  "Once service is challenged, [the] plaintiff[ ] bear[s] the burden of establishing that service was valid under Rule 4." *Brockmeyer*, 383 F.3d at 801.

Rule 4 requires that the court extend the time for service if the plaintiff "shows good cause for the failure" to serve.  Fed. R. Civ. P. 4(m).  "[C]ourts must determine whether

---

[2] The Court addresses Defendants' failure to serve and lack of personal jurisdiction arguments under the Failure to Serve Defendants Bullington and Woody heading.

good cause for the delay has been shown on a case by case basis." *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). "At a minimum, good cause means excusable neglect." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991) (internal quotation marks omitted). A plaintiff may also be required to show: (i) the party to be served personally received actual notice of the lawsuit; (ii) the defendant would suffer no prejudice from the defect in service; and (iii) the plaintiff would be severely prejudiced if her complaint were dismissed. *Id.* Absent a good cause showing, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

### B.    Dismissal For Failure To Serve Appropriate

The parties agree that Plaintiff failed to serve individual Defendants Bullington and Woody with process. (*See* Docs. 17 at 5; 22 at 1.) Plaintiff also fails to demonstrate good cause for the failure to do so. (*See* Doc. 22 at 1.) Defendants Bullington and Woody should therefore be dismissed without prejudice from this case. *See Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (ruling that under Rule 4(m) a complaint should be dismissed without prejudice when a failure to serve the defendant is undisputed).

### II.    National Origin Discrimination Under Title VII

Defendants next assert that Plaintiff's national origin discrimination claim should be dismissed because (i) she fails to establish a prima facie case of discrimination; (ii) the positions for which she applied fall outside of a two-year statute of limitations; (iii) she fails to demonstrate others outside of her class were treated more favorably; and (iv) she fails to demonstrate she was qualified for the positions sought. (Doc. 17 at 6-7.) The Court finds that Plaintiff need not establish a prima facie discrimination case at the pleading stage, her discrimination claim is premised upon incidents that fall within a 300-day exhaustion period, and that Plaintiff's allegations are sufficient to infer that she suffered adverse employment action because of her national origin.

### A.    Disparate Treatment Pleading Standard

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment,

because of [her] … national origin." 42 U.S.C. § 2000e-2(a)(1). "Failure to promote is a common manifestation of disparate treatment" under Title VII, *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004), as is failure to hire, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973). "[T]he plaintiff in a disparate treatment case must show the employer's intent to discriminate, but intent may be inferred from circumstantial evidence." *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988) (citation omitted). One way to establish an inference of discrimination is by satisfying the prima facie elements from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 690 (9th Cir. 2017).

To state a prima facie disparate treatment claim under Title VII, a plaintiff must allege she: "(1) belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably or that a discriminatory reason motivated the employer." *Belt v. Andrew Rees - Crocs, Inc.*, 2024 WL 1638548, at *5 (D. Nev. Apr. 15, 2024) (citing *Reynaga*, 847 F.3d at 690-91). Alternatively, under Rule 8(a)'s notice pleading standard, the plaintiff's complaint must include "sufficient, nonconclusory allegations plausibly linking the [adverse employment] action to discrimination on the basis of [national origin]." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019).

### B. Plaintiff States Cognizable National Origin Discrimination Claim

Plaintiff alleges that: (i) she is a female of Hispanic descent, (Doc. 12, ¶ 1); (ii) she was qualified for six different District positions to which she applied, (*id.*, ¶ 16); (iii) she was denied the positions, (*id.*, ¶¶ 16, 19-21, 23-25); and (iv) individuals outside her protected class were treated more favorably, (*id.*, ¶¶ 19-21, 23, 25).[3] These allegations are

---

[3] Plaintiff's allegation that she suffered discrimination in the hiring process for an Interim Part-Time Athletic Director, (Doc. 12, ¶ 24), is included in the conclusion that she sufficiently pleaded a national origin discrimination claim because the District's closing of the job opening may constitute an adverse employment action, *see Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986), and Plaintiff alleges "other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination," *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

sufficient to raise Plaintiff's right to relief above the speculative level on the assumption that her allegations are true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (instructing that to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."). Plaintiff also correctly names the District as Defendant, as "[a] suit against a school [administrator] in his or her official capacity is equivalent to a suit against the school district." *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 978 (D. Ariz. 2017); *see also Ortez v. Wash. Cnty.*, 88 F.3d 804, 808 (9th Cir. 1996) ("[E]mployees cannot be held liable in their individual capacities under Title VII."); Plaintiff therefore states a valid national origin discrimination claim against the District.

### C.    Counterarguments Unavailing

In addition to finding that Plaintiff sufficiently states a national origin discrimination claim under Title VII, the Court finds Defendants' counterarguments unavailing.

#### 1.    Prima Facie Case Establishment Unnecessary At Pleading Stage

Defendants repeatedly argue that Plaintiff's national origin discrimination claim should be dismissed because she fails to establish a prima facie discrimination case. (*See* Doc. 17 at 7-9.) However, the United States Court of Appeals for the Ninth Circuit has reiterated that a "plaintiff need not make a prima facie showing to survive a motion to dismiss provided [s]he otherwise sets forth a short and plain statement of h[er] claim showing that [s]he is entitled to relief." *Ortez*, 88 F.3d at 808 (citing *Sosa v. Hiraoka*, 920 F.2d 1451, 1460 (9th Cir. 1990)); *see also Mattioda v. Nelson*, 98 F.4th 1164, 1174-75 (9th Cir. 2024) (rejecting *McDonnell Douglas* burden-shifting framework as an impermissible heightened pleading standard); *Austin*, 925 F.3d at 1137 ("We read the Second Circuit's application of the *McDonnell Douglas* presumption at the pleading stage as contrary to Supreme Court precedent, and we decline to embrace that approach."). Defendants' argument that Plaintiff's national origin discrimination claim should be dismissed because she fails to establish a prima facie discrimination case at the pleading stage should therefore be denied.

## 2.    Statute Of Limitations Fails To Bar Claim

Defendants next argue that Plaintiff's national origin discrimination claim should be dismissed because the majority of the positions to which she applied fall outside of a two-year statute of limitations.  (Doc. 17 at 6.)  While the Court finds that one of the alleged discriminatory hiring practices occurred outside of the mandatory 300-day filing period, it determines the other alleged discriminatory practices occurred within the relevant filing period.  Defendants' statute of limitations argument should therefore be denied.[4]

Title VII requires employees to comply with certain administrative procedures as a precondition to suit.  *See Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001).  "Before a plaintiff may file a Title VII or ADEA suit in federal court, she must first file a charge with the EEOC."  *Bond v. Wells Fargo Bank NA*, 782 F. Supp. 3d 743, 752-53 (D. Ariz. 2025) (cleaned up).  A written statement to the EEOC constitutes a charge when it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  *Staton v. U.S. Airways Inc.*, 2011 WL 855789, at *3 (D. Ariz. Mar. 11, 2011) (quoting *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)).  A charge does not need to be signed and verified to become effective.  *See McWilliams v. Latah Sanitation, Inc.*, 149 F. App'x 588, 590 (9th Cir. 2005) (instructing that when a charge provides "a sufficient description of the factual allegations to put the employer on notice and allow the administrative agency to conduct a complete investigation of the charges, the initial failure to verify … should not be fatal to the employee's later filed lawsuit.")

In Arizona, a plaintiff's charge "must be filed with the EEOC within 300 days after the alleged unlawful practice occurred."  *Bond*, 782 F. Supp. 3d at 753 (cleaned up).  Unlawful employment practices include discrete discriminatory acts such as "termination,

---

[4] The Court declines to address any new statute of limitations arguments in Defendants' reply, (*see, e.g.,* Doc. 23 at 2-3), because the arguments are waived.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Additionally, if the EEOC issues a right-to-sue letter, the plaintiff then has 90 days to file a lawsuit. *Bond*, 782 F. Supp. 3d at 753. "This ninety-day period is a statute of limitations." *Id*. (citation omitted). If a claimant fails to file the civil action within the ninety-day period, "the action is barred." *Id*.

### a. Post June 5, 2023 Discriminatory Practices Actionable

Defendants assert that the "majority of the positions [Plaintiff] discusses in her [c]omplaint were applied for more than two years ago, so they cannot serve as the basis for her discrimination claim." (Doc. 17 at 6.) This assertion is misleading.

First, Defendants fail to bolster their two-year statute of limitations argument with supporting caselaw or cogent argument. (*See* Doc. 17 at 6.) The argument may therefore be summarily denied. *See Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) (rejecting "[b]are assertions" that were "unaccompanied by analysis and devoid of caselaw").

Second, the Court finds that a 300-day exhaustion period applies to Plaintiff's Title VII national origin discrimination claim. *See Bond*, 782 F. Supp. 3d at 753 ("Plaintiff's charge must be filed with the EEOC within 300 days after the alleged unlawful practice occurred.") (cleaned up).

Third, because a 300-day exhaustion period applies to Plaintiff's national origin discrimination claim, any discriminatory hiring practice(s) upon which her claim is based must have occurred in the 300-day period prior to her April 2024 charge with the EEOC— i.e., between June 6, 2023, and April 1, 2024.[5] Any discrete discriminatory acts occurring

---

[5] The Court takes as true Plaintiff's allegation that she timely filed an EEOC charge in April 2024. (*See* Doc. 12, ¶ 12.) While the Court finds Plaintiff's EEOC charge incorporated by reference into her amended complaint, the copy of the charge appended to Defendants' reply, (*see* Doc. 23 at 11-12), fails to demonstrate the charge was "submitted on or about November 21, 2024" as Defendants contend, (*id.* at 2). *See Edelman v. Lynchburg Coll.*, 536 U.S. 106, 112-13 (2002) (rejecting argument that a charge is not a charge until the filer satisfies Title VII's oath or affirmation requirement). Moreover, the

prior to June 6, 2023, are inactionable.[6]  *See Lyons v. England*, 307 F.3d 1092, 1108 (9th Cir. 2002) ("A discriminatory practice, though it may extend over time and involve a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of each of which must be brought within the statutory limitations period.").

Therefore, viewing the factual allegations in the Amended Complaint in the light most favorable to Plaintiff, five out of the six alleged discriminatory hiring practices may form the basis of her national origin discrimination claim.[7]  Defendants' argument that Plaintiff's discrimination claim should be dismissed because the majority of the positions to which she applied were more than two years ago should therefore be denied.

### 3.   Plaintiff Need Not Identify Similarly Situated Comparator

Defendants next argue that Plaintiff's national origin discrimination claim should be dismissed because the person who ultimately received the Athletic Director position for which Plaintiff applied is also of Hispanic origin.  (Doc. 17 at 7.)  The Court disagrees.

As previously indicated, there are five alleged discriminatory hiring practices upon which Plaintiff's national origin claim may be based.  Four of them include allegations that individuals outside of Plaintiff's protected class were hired instead.  (*See* Doc. 12, ¶¶ 20-21, 23, 25.)  More importantly, Plaintiff does not need to identify a similarly situated comparator at the pleading stage or prove the comparator's distinct heritage.  *See Littlejohn*

caselaw Defendants raise fails to support any contention that the "date(s) discrimination took place" listed in the charge is the operable date upon which the statute of limitations runs.  (*See* Doc. 23 at 2.)

[6] Plaintiff fails to support the bare assertion that hers is "an ongoing discriminatory case," (*see* Doc. 22 at 6), with any argument or caselaw, and the "continuing violations doctrine does not save discrete discriminatory acts that are time barred, even if they are plausibly or sufficiently related to the act that is not time barred."  *Wilson v. City of Fresno*, 763 F. Supp. 3d 1073, 1093 (E.D. Cal. 2025) (citing *Morgan*, 536 U.S. at 114).

[7] At the pleading stage, any alleged discriminatory hiring practices occurring in the 2022-2023 year are presumed to have occurred on or after June 6, 2023, as to fall within the 300-day exhaustion window.  *Cf. Jarvis v. Traka USA LLC*, 2024 WL 4651937, at *4 (D. Ariz. Nov. 1, 2024) (presuming plaintiff's allegation he was denied promotion in July 2023 to include the last three days of the month, which would fall within the exhaustion window).

*v. Kaiser Found. Health Plan of Wash.*, 2024 WL 4451955, at *5 (W.D. Wash. Oct. 9, 2024) ("A plaintiff is not required to plead … a comparator evidence theory of discrimination."). "[A] plaintiff may show an inference of discrimination in whatever manner is appropriate in the particular circumstances." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (cleaned up). "A plaintiff may do so through comparison to similarly situated individuals, or any other circumstances surrounding the adverse employment action that give rise to an inference of discrimination." *Id.* (cleaned up). "[W]hether two employees are similarly situated is ordinarily a question of fact." *Id.* at 1157 (quoting *Beck v. United Food & Com. Workers*, 506 F.3d 874, 885 n.5 (9th Cir. 2007)). Defendants' argument that Plaintiff's national origin discrimination claim should be dismissed because one of her alleged comparators is actually within the same protected class should therefore be denied.

### 4. Plaintiff Provides Sufficient Facts To State Plausible Claim

Defendants finally argue that Plaintiff's national origin discrimination claim should be dismissed because the allegations in her Amended Complaint demonstrate that she was unqualified for the 2023-2024 Athletic Director position and that she cannot satisfy the second element of a prima facie discrimination claim. (Doc. 17 at 7.) This argument is, again, misguided. "The prima facie case under *McDonnell Douglas* … is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. "[P]laintiffs in discrimination cases merely need to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Craig v. City of L.A.*, 2024 WL 5516277, at *4 (C.D. Cal. Dec. 16, 2024) (quoting *Swierkiewicz*, 534 U.S. at 512). At the motion to dismiss stage, "a plaintiff need only provide enough facts to state a claim to relief that is plausible on its face." *Austin*, 925 F.3d at 1137 (internal quotation marks and citation omitted). "In assessing the sufficiency of a complaint, the role of the court is not in any way to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed." *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 947-48 (9th Cir. 2020) (cleaned up).

As it concerns Plaintiff's qualifications, Plaintiff alleges that she has been a teacher in the District since 2017, (Doc. 12, ¶ 15), she was qualified for the positions sought, (*id.* ¶ 16), she was told by administrators that "she would make a great Athletic Director" and was being groomed for the position, (*id.* ¶ 18), and she worked as a volunteer cheer coach since the 2022-2023 school year, (*id.* ¶ 19). These allegations are sufficient to infer Plaintiff was qualified for the position. Whether Plaintiff was actually qualified for any of the positions she sought is not relevant at the pleading stage. *See Schwake*, 967 F.3d at 947-48 ("[T]he role of the court is not in any way to evaluate the truth as to what really happened"). Even if Plaintiff was unqualified for the Athletic Director position, she provides sufficient factual information to infer that a discriminatory reason motivated the District to hire a different applicant and provides four other incidents of discrimination upon which her claim may be based. Defendants' argument that Plaintiff's national origin discrimination claim should be dismissed because she fails to demonstrate she was qualified for the Athletic Director position should therefore be denied.

## III.    Retaliation Under Title VII

Defendants next assert that Plaintiff's Title VII retaliation claim should be dismissed because Plaintiff fails to clearly identify the adverse employment action that occurred after her alleged protected activity. (Doc. 17 at 8.) Defendants assert that the causal link of a retaliation claim cannot be established where the alleged retaliation occurs before the protected activity. (*Id.* at 9.) As it concerns the claim at hand, the Court agrees.[8]

### A.    Pleading Standard

"Like discrimination, retaliation may be shown using the *McDonnell Douglas* burden shifting framework." *McGinest*, 360 F.3d at 1124. However, a plaintiff is not required to plead a prima facie retaliation case so long as she includes "a short and plain

---

[8] The Court is aware of retaliation claims where the adverse employment action is taken in anticipation of a plaintiff's protected activity. *See, e.g., Stilwell v. City of Williams*, 831 F.3d 1234, 1238 (9th Cir. 2016) (allowing plaintiff's retaliation claims to proceed on the theory he was fired for planning to testify against his employer). That scenario has not been presented here.

statement of the claim showing that [she] is entitled to relief." *Swierkiewicz*, 534 U.S. at 512 (quoting Fed. R. Civ. P. 8(a)(2)). "When a plaintiff does not plead a prima facie case, courts [may] still look to the elements of the prima facie case to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300–01 (N.D. Cal. 2020) (cleaned up). To state a cognizable retaliation claim, Plaintiff must allege facts sufficient to support an inference that she: (i) engaged in protected activity under Title VII; (ii) the District subjected her to adverse employment action; and (iii) a causal link exists between the protected activity and the adverse employment action. *Equal Emp. Opportunity Comm'n v. Tesla, Inc.*, 727 F. Supp. 3d 875, 893 (N.D. Cal. 2024).

There are two types of protected activity for purposes of a Title VII retaliation claim: participation and opposition. *Anderson v. City & Cnty. of S.F.*, 169 F. Supp. 3d 995, 1026 (N.D. Cal. 2016). "Participation involves filing a complaint, testifying, assisting or participating [ ] in the machinery set up to enforce the provisions of Title VII." *Id*. (internal quotation marks and citation omitted). Internal complaints to supervisors constitute protected activity. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) ("[Plaintiff's] informal complaints to [her supervisor] in 1993 constitute a protected activity."); *Mayo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994) (allowing retaliation claim based on informal protest of alleged discriminatory policy).

"[A]dverse employment action" is defined broadly, *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (cleaned up), and the Ninth Circuit takes "an expansive view of the type of actions that can be considered adverse employment actions," *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000). "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity," *Henderson*, 217 F.3d at 1243, and adverse employment actions may include refusals to promote, disadvantageous assignments, and toleration of harassment by other employees, *id.* at 1241.

- 14 -

To establish a causal connection between protected activity and adverse action, a plaintiff may allege direct or circumstantial evidence from which causation can be inferred, such as an employer's "pattern of antagonism following the protected conduct," *Porter v. Cal. Dep't Corrs.*, 419 F.3d 885, 895 (9th Cir. 2005), or the "temporal proximity" of the protected activity and the occurrence of the adverse action, *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). While "a lack of temporal proximity may make it more difficult to show causation, circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference." *Porter*, 419 F.3d at 895.

### B.    Plaintiff Fails To Plead Cognizable Retaliation Claim

Plaintiff's theory of retaliation rests on the premise that she was retaliated against by not being promoted *after* complaining to management about her treatment in the "promotional application processes" as well as reporting insufficient class funding. (*See* Docs. 12, ¶ 54; 22 at 8.) The facts alleged in Plaintiff's Amended Complaint, however, demonstrate that Plaintiff was denied promotions *before* she complained of hiring discrimination in March 2024. (*See* Doc. 12, ¶¶ 16, 18, 19-21, 23-25, 29.) Additionally, there are insufficient allegations in Plaintiff's Amended Complaint to infer that she reported insufficient class funding and the reporting occurred before she was denied promotional opportunities, (*see id.* ¶¶ 30, 33-35). As such, Defendants' argument that Plaintiff's retaliation claim should be dismissed because she fails to establish a plausible causal link between her protected activity and the alleged adverse actions should be granted, and Plaintiff's Title VII retaliation claim against the District should be dismissed. *See Arya v. CalPERS*, 943 F. Supp. 2d 1062, 1071 (E.D. Cal. 2013) (dismissing plaintiff's Title VII retaliation claim where "the entirety of defendant's allegedly adverse employment actions predated plaintiff's participation in enforcing his rights under Title VII.").

### IV.    Age Discrimination Under ADEA

Defendants next assert that Plaintiff's age discrimination claim should be dismissed because the only job to which she applied that is not time barred is the Athletic Director position and that Plaintiff fails to demonstrate she met the qualifications for the position or

that the individual who received it was "substantially younger" than she is.[9] (Doc. 17 at 9.) The Court agrees that Plaintiff fails to allege sufficient facts to draw the inference that she suffered adverse employment action because of her age and that her discrimination claim under the ADEA should be dismissed.

### A.    Pleading Standard

The ADEA makes it illegal for an employer "to fail or refuse to hire … any individual [age forty or above] … because of such individual's age." 29 U.S.C. § 623(a)(1). "In a failure-to-promote case, a plaintiff may establish a prima facie case of discrimination in violation of the ADEA by producing evidence that he or she was (1) at least forty years old, (2) qualified for the position for which an application was submitted, (3) denied the position, and (4) the promotion was given to a substantially younger person." *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012). However, as is the case for Title VII claims, "[a] plaintiff in an ADEA case is *not required* to plead a prima facie case of discrimination in order to survive a motion to dismiss." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012). Alternatively, under Rule 8(a)'s notice pleading standard, the plaintiff's complaint must include "sufficient, nonconclusory allegations plausibly linking the [adverse employment] action to discrimination on the basis of [age]." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019).

### B.    Plaintiff Fails To State Cognizable Age Discrimination Claim

Plaintiff alleges that: (i) she is over forty years of age, (Doc. 12, ¶ 1); (ii) she was qualified for all the positions to which she applied, (*id.*, ¶ 16); (iii) she was not hired for the Athletic Director position, (*id.*, ¶ 25); and (iv) a white, non-Hispanic female applicant was hired instead, (*id.*, ¶ 25). Notably, Plaintiff fails to provide any factual allegations concerning the applicant's age, (*see id.*), or about any of the other applicants' ages, (*see ¶¶* 19-21, 23). As such, the Court cannot plausibly infer from Plaintiff's allegations that she suffered employment discrimination because of her age. *See Kim v. Univ. of Guam*, 2024

---

[9] The Court declines to address the conclusory assertion that only Plaintiff's application for the Athletic Director position is actionable under the ADEA. (*See* Doc. 17 at 9.)

WL 4350188, at *14 (D. Guam Sept. 30, 2024) (dismissing ADEA claim where plaintiff "only alleged that she falls beyond the proper age threshold (over forty years old) and was rejected for the position."). Defendants' argument that Plaintiff's age discrimination claim should be dismissed because Plaintiff fails to allege the individual who received the Athletic Director position to which she applied is substantially younger than her should therefore be granted and Plaintiff's age discrimination claim dismissed without prejudice.

## V.      National Origin Discrimination Under Section 1981

Defendants next assert that Plaintiff's § 1981 national origin discrimination claims should be dismissed because the Ninth Circuit fails to recognize § 1981 claims based national origin discrimination. (Doc. 17 at 10.) While the Court agrees that national origin discrimination claims are "not within the ambit of § 1981," *Fonseca*, 374 F.3d at 850, it finds that Plaintiff states valid § 1981 race discrimination claims because she satisfies the prima facie elements of Title VII disparate treatment discrimination claims.

### A.      Pleading Standard

Section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). While "national origin discrimination is not within the ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups." *Fonseca*, 374 F.3d at 850. "Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable [to] a Title VII disparate treatment case." *Id*. "Both require proof of discriminatory treatment and the same set of facts can give rise to both claims." *Id*. A plaintiff may establish a prima facie case of employment discrimination under Title VII by showing that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of

discrimination." *Id*. at 847.

### B.    Plaintiff States Cognizable § 1981 Race Discrimination Claims

Plaintiff alleges that: (i) she is a Hispanic female over forty years old, (Doc. 12, ¶ 1); (ii) she was qualified for six different positions to which she applied, (*id.*, ¶ 16); (iii) she was denied the positions, (*id.*, ¶¶ 16, 19-21, 23-25); and (iv) individuals outside her protected class were treated more favorably, (*id.*, ¶¶ 19-21, 23, 25).[10]

These allegations are sufficient to raise Plaintiff's right to relief above the speculative level on the assumption that the allegations are true. *See Twombly*, 550 U.S. at 555. In *Fonseca v. Sysco Food Services of Arizona, Inc.*, the Ninth Circuit observed that there was a genuine issue of material fact as to whether the employer discriminated against its employee under § 1981 "because he is Hispanic." 374 F.3d at 850. Whether Defendants discriminated against Plaintiff because she is Hispanic is also one of the relevant questions here. Defendants' assertion that Plaintiff's § 1981 national origin discrimination claim should be dismissed because the claim fails as a matter of law should therefore be denied.

## VI.    Equal Protection Under Fourteenth Amendment

Defendants next assert that Plaintiff's Fourteenth Amendment equal protection claim should be dismissed because the District can show that another Hispanic woman received one of the positions to which Plaintiff applied and that Plaintiff did not meet the minimum requirements for the position. (Doc. 17 at 11.) The Court disagrees.

### A.    Pleading Standard

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a

---

[10] Plaintiff's allegation that she suffered discrimination in the hiring process for an Interim Part-Time Athletic Director, (Doc. 12, ¶ 24), is included in the conclusion that she sufficiently pleaded § 1981 race discrimination claims because the District's closing of the job opening may constitute an adverse employment action, *see Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986), and Plaintiff alleges "other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination," *Hawn v. Exec. Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

protected class." *Sampson v. Cnty. of L.A.*, 974 F.3d 1012, 1022 (9th Cir. 2020). A plaintiff may establish discriminatory purpose by "producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way." *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022) (cleaned up). "Where direct evidence is unavailable, plaintiffs can, and frequently do, rely on the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as a way of channeling inquiry into the available circumstantial evidence." *Id.* "Under the burden-shifting framework set out in *McDonnell Douglas* …, a plaintiff may make out a prima facie case of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." *Garrett v. Governing Bd. of Oakland Unified Sch. Dist.*, 583 F. Supp. 3d 1267, 1276 (N.D. Cal. 2022) (citing *Ballou*, 29 F.4th at 1050).

A municipality may be held liable for civil rights violations when action pursuant to official municipal policy causes a constitutional tort. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). There are three situations in which isolated constitutional violations are sufficient to establish a municipal "policy." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). One of those situations is where the person causing the violation has "final policymaking authority." *Id.* Whether an official has final policymaking authority is question of state law for the court to decide before the case is submitted to the jury. *Id.* "A municipality also can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Id.* at 1238. "Ordinarily, ratification is a question for the jury." *Id.* at 1238-39. Finally, a municipal policy may be established under a "deliberate indifference" theory. *Id.* at 1240. "As with ratification, a plaintiff must establish a genuine issue of material fact as to the question whether the final policymaker acted with deliberate indifference to the subordinate's constitutional violations." *Id.*

**B.    Plaintiff States Cognizable Equal Protection Claims Under § 1983.**

The Court has already applied the *McDonnell Douglas* framework to conclude Plaintiff has stated cognizable disparate treatment claims under § 1981.  The same pleading standard applies to Plaintiff's equal protection claims under § 1983.  *See Ballou*, 14 F.4th at 1050 (instructing that a plaintiff can establish discriminatory purpose by relying on the *McDonnell Douglas* burden shifting framework).  Defendants' argument that Plaintiff's equal protection claims should be dismissed because the District can ultimately prove another Hispanic woman received one of the positions to which Plaintiff applied, (*see* Doc. 17 at 11), is unavailing.  *See Ballou*, 29 F.4th at 426 ("The existence of a comparator is not a prerequisite to stating a disparate treatment claim under the Fourteenth Amendment.").  Defendants' assertion that Plaintiff's equal protection claims must fail because the District will ultimately demonstrate that she did not meet the minimum requirements for the position, (*see* Doc. 17 at 11), also fails.  *See Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1117 (E.D. Cal. 2011) ("To plead a cognizable equal protection claim, Plaintiff must simply allege facts that plausibly show that Plaintiff was discriminated against as a member of an identifiable class.").  Plaintiff also states a cognizable equal protection claim against the District because she alleges discrimination by individuals who may possess final policymaking authority.  (*See* Doc. 12, ¶¶ 3, 5, 7, 24-25.)  Defendants' assertions to the contrary are "really an invitation to weigh the evidence or 'forecast' [Plaintiff's] likelihood of success on the merits," which "the Court cannot do on a Rule 12(b)(6) motion."  *Diemert v. City of Seattle*, 689 F. Supp. 3d 956, 965 (W.D. Wash. 2023) (citation omitted).  Defendants' assertions that Plaintiff's equal protection claims should be dismissed based on the merits of the claims should therefore be denied.

**VII.    Qualified Immunity**

Lastly, the individual Defendants assert they are shielded by qualified immunity from Plaintiff's equal protection claims because Plaintiff's "complaint fails to sufficiently allege any action by any of the individual[ Defendants] that deprived [Plaintiff] of a federally protected right."  (Doc. 17 at 12.)  The Court disagrees.

### A.    Legal Standard

"A public official sued for damages in their individual capacity is entitled to qualified immunity unless (1) the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right and (2) the right at issue was clearly established in light of the specific context of the case at the time of the alleged misconduct." *Jensen v. Brown*, 131 F.4th 677, 686 (9th Cir. 2025) (cleaned up).  "Liability under § 1983 arises only upon a showing of personal participation by the defendant." *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1013 (S.D. Cal. 2018).  However, the Ninth Circuit has held that under § 1983 the qualified immunity defense is "inapplicable whenever an official does an affirmative act, participates in another's affirmative acts, or *omits to perform an act which he is legally required to do* that causes the deprivation of an individual's rights." *Alexander v. Perrill*, 916 F.2d 1392, 1396 (9th Cir. 1990) (cleaned up).  Either prong of the qualified immunity analysis may be addressed in light of the circumstances.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### B.    Allegations Sufficient To Establish Individual Liability

Defendants challenge the first prong of the qualified immunity analysis in that they contend Plaintiff fails to sufficiently allege individual liability for her equal protection claims.  (*See* Doc. 17 at 12-13.)  There are five individual Defendants named in Plaintiff's Amended Complaint: Bullington, Giacamino, McBeth, Watts, and Woody.  (Doc. 12, ¶¶ 3-7.)  The Court has already determined that Defendants Bullington and Woody should be dismissed without prejudice from suit due to a failure to serve.  As it concerns Defendants Giacamino, McBeth, and Watts, Plaintiff alleges, in pertinent part: (i) Giacamino served as Dean of Students—was involved in the Holley incident and the DonorsChoose matter— and was one of the decisionmakers who used discriminatory hiring practices to fill the 2024 Athletic Director position, (*see id.* ¶¶ 5, 25-28, 30-35); (ii) McBeth served as Assistant Superintendent—was involved in the Holley incident, the establishment of interview hiring practices, and the DonorsChoose matter—and was one of the decisionmakers who used discriminatory hiring practices to fill the 2024 Athletic Director position, (*see id.*, ¶¶ 7, 25-

- 21 -

28, 30-35); and (iii) Watts served as principal from 2023 to 2025—directly received Plaintiff's discrimination report and participated in the DonorsChoose matter—and was one of the decisionmakers who used discriminatory hiring practices to fill the 2024 Athletic Director position, (*see id.*, ¶¶ 3, 25, 29-30, 33-35). These allegations are sufficient to establish individual liability for equal protection violations under § 1983, and Defendants' motion to dismiss the individual Defendants based on qualified immunity should therefore be denied.

## RECOMMENDATION

The Magistrate Judge recommends that the District Judge, after her independent review, grant in part and deny in part Defendants' Motion to Dismiss Amended Complaint and Limited Appearance by Defendants Bullington and Woody (Doc. 17). The motion should be granted as to Defendants Bullington and Woody and Plaintiff's retaliation and age discrimination claims. The motion should be denied as to the remaining claims. Defendants Bullington and Woody and Plaintiff's retaliation and age discrimination claims should be dismissed without prejudice from this case. The following nine (9) claims should be allowed to proceed: (i) national origin discrimination under Title VII against the District; (ii - v) racial discrimination under § 1981 against the District and individual Defendants Giacamino, McBeth, and Watts; and (vi - ix) equal protection violations under § 1983 against the District and individual Defendants Giacamino, McBeth, and Watts.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen (14) days of being served with a copy of this Report and Recommendation, and a party may respond to another party's objections within fourteen (14) days after being served with a copy. No replies shall be filed unless leave is granted by the District Court. If objections are filed, the parties should use the following case number: **CV-25-475-RM**. Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of de novo review.

Dated this 7th day of May, 2026.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge